UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JEMERE GUILLORY**, <br><br> Petitioner, <br><br> v. <br><br> **KELLY SANTORO, Warden**, <br><br> Respondent. | Case No.: 17cv02084 CAB (BGS) <br><br> **REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DENY PETITION FOR WRIT OF HABEAS CORPUS** |

**INTRODUCTION**

Petitioner Jemere Guillory ("Petitioner") has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition"). (ECF No. 1.) Petitioner is serving a sentence of twenty-five years to life plus twenty-nine years, eight months following his conviction in the San Diego County Superior Court to one count of simple mayhem, one count of assault with a firearm, two counts of possession of a firearm by a felon, one count of possession of cocaine base for sale, one count of possession of Oxycodone for sale, one count of possession of Diazepam for sale, and one count of receiving over $25,000 from illegal drug sales.

The Petition asserts the following claims: (1) his Sixth Amendment right to a public trial was violated when his family was allegedly excluded from the courtroom during voir dire; (2) his Fourth Amendment rights were violated when the police unlawfully searched

his home and used the evidence during trial;[1] and (3) there was insufficient evidence of a disfiguring injury to support his mayhem conviction. The Court has reviewed the Petition, the Answer, the Traverse, the lodgments, and all the supporting documents submitted by both parties. For the reasons discussed below, the Court **RECOMMENDS** the Petition be **DENIED**.

## BACKGROUND

### I. FACTUAL BACKGROUND

This Court is required to "presume the correctness of a state court's factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 127 S.Ct. 1933, 1940 (2007) (28 U.S.C. § 2254(e)(1)).

#### A. Incident at the Store[2]

In May 2012, a shooting occurred around 9:30 p.m. near a market in Southeast San Diego following an incident involving Petitioner, his girlfriend, and the victim inside the market. (Lod. 6 at 3.) Petitioner's girlfriend and the victim got into an argument after the victim inappropriately touched her in the market. (*Id.*) Petitioner and his girlfriend left the market followed by Petitioner. (Lod. 6 at 3-4.) Although the girlfriend testified she did not see the shooting and Petitioner denied shooting the victim, trial testimony from other witnesses indicated that the victim followed the couple, he and the couple continued to engage, and Petitioner then shot the victim in the leg. (Lod. 6 at 4-6, 9.)

#### B. Search of Petitioner's Mother's House

Police used still images from the market's surveillance to make a flyer with a picture of the suspect. (Lod. 6 at 6.) A gang task force officer subsequently identified Petitioner from the flyer. (*Id.*) Police then arrested Petitioner during a

---

[1] As discussed below, Petitioner admits in his Traverse that this claim is barred by *Stone v. Powell*, 428 U.S. 465 (1976).

[2] Because Petitioner's insufficiency of the evidence claim regards only sufficiency of the evidence of the permanent disfigurement of the victim for his mayhem conviction, the Court only briefly summarizes the facts regarding the actual shooting.

traffic stop and found a house key on his car key ring. (*Id.*) Police then conducted a preliminary search to secure the location pending the issuance of the warrant. (*Id.*) After the warrant issued later that night, police searched the home and found paperwork belonging to Petitioner in an upstairs bedroom along with

> among other items a .40-caliber handgun and magazine with eight rounds inside; long red shorts, a black jacket with gray stripes and shoes, all of which were similar to those worn by the suspect as seen on the surveillance video; photos of [Petitioner]; two digital scales with off-white residue on them, along with two razors; a locked safe; a box of plastic baggies; jail mail from Xaypanya addressed to [Petitioner]; and two Pyrex cooking dishes, both with off-white residue on them.
> In a downstairs closet, police found a .45-caliber semiautomatic handgun with three extended magazines for the gun, two of which were loaded; a 12-gauge shotgun inside a brown case; a 700 rifle with a scope and tripod and 10 rounds of ammunition inside a case; a 2006 rifle with a scope in a black soft case; one box of nine-millimeter ammunition; and four other boxes of ammunition.
> After an additional search warrant issued, police opened the safe and inside they found a .32-caliber revolver along with six rounds of ammunition; an ExtenZe package with four tablets missing; a full unopened package of ExtenZe; 92 five-milligram Oxycodone tablets; 100 Oxycodone tablets; a counterfeit $20 bill; two credit cards belonging to a third party; 9.46 grams of methamphetamine; almost four pounds of cocaine base; and about $28,500 in cash, separated in small stacks and bundled with black rubber bands.
> Several days later, police again searched [Petitioner's] home pursuant to a search warrant. In this subsequent search, they found [Petitioner's] California identification card in a downstairs closet. In an upstairs bedroom, police found 18 boxes of sandwich baggies; four bags of black rubber bands similar to the rubber bands used to bundle the cash police already had found; razor blades, including one with cocaine residue; two scales; a pocket scale with cocaine reside on it; and a 100-gram weight to calibrate the scales.

(Lod. 6 at 6-7.) Petitioner's fingerprints were later found on the ExtenZe recovered from the safe, and other DNA found on the .45-caliber handgun matched to him as well. (Lod. 6 at 7.) A San Diego Police Detective testified on the amount of money the cocaine would be worth and if it was made for the purpose of sale, and the likelihood of Petitioner's

participation in the 5/9 Brims street gang.[3] (*Id.*) Petitioner testified that neither the guns nor drugs were his, and that he did not live in that house. (Lod. 6 at 9.) He also testified that the key was his, and stated it was "added" to his key ring after he was arrested. (Lod. 6 at 10.)

## II. PROCEDURAL BACKGROUND

### A. Petitioner's Conviction and Direct Appeal

On February 7, 2014, a San Diego County jury convicted Petitioner of one count of simple mayhem, one count of assault with a firearm, two counts of possession of a firearm by a felon, one count of possession of cocaine base for sale, one count of possession of Oxycodone for sale, one count of possession of Diazepam for sale, and one count of receiving over $25,000 from illegal drug sales. (Lod. 1 RT 12; Lod. 6 at 2-3.) On June 13, 2014, the trial court sentenced Petitioner to twenty-five years to life, plus twenty-nine years and eight months in state prison. (Lod. 1 RT 13; Lod. 6 at 3.)

On December 8, 2014, Petitioner appealed his conviction of simple mayhem to the California Court of Appeals. (Lod. 3.) Petitioner claimed that evidence obtained and admitted at trial should have been suppressed and that there was insufficient evidence for his mayhem conviction. (Lod. 3 at 19-47.) Petitioner also argued that his right to a public trial had been violated due to his family's alleged exclusion from voir dire. (Lod. 3 at 19-30.)[4]

On October 26, 2015, the California Court of Appeals issued a reasoned decision affirming Petitioner's conviction. (Lod. 6) The court found the evidence sufficient to support his mayhem conviction and that the trial court properly denied Petitioner's motion

---

[3] The detective opined the cocaine would be worth at least $70,000 or more and "that a person in possession of such items did so for the purpose of sale. He also opined that based on the evidence found, that Petitioner was "at all times relevant… an active member of the 5/9 Brims gang." (Lod. 6 at 4-5).

[4] Petitioner also argued the trial court erred in not sua sponte instructing Petitioner's jury on the lesser included offenses of simple possession. (Lod. 3 at 47-53).

to suppress evidence. (Lod. 6 at 14-22) The court also rejected Petitioner's claim that he was denied a public trial based on the alleged exclusion of family members during voir dire. (Lod. 6 at 10-14.)

On November 25, 2015, Petitioner raised these same claims to the California Supreme Court in a petition for review. (Lod. 7.) On February 3, 2016, the California Supreme Court denied review of those claims. (Lod. 8.)

**B. State Habeas Corpus**

A year later, on February 3, 2017, Petitioner filed a petition for writ of habeas corpus in the San Diego County Superior Court, again raising his claim he was denied a public trial because his family was excluded from the courtroom during voir dire. (Lod. 9.) His petition included his own declaration and declarations from two family members. (*Id.*) On June 2, 2017, following briefing, the San Diego County Superior Court denied the petition, (*Id.*)

On June 27, 2017, Petitioner filed a habeas petition in the California Court of Appeal, again claiming that he was denied his sixth amendment right to a public trial. (Lod. 11.) The California Court of Appeal denied the petition June 29, 2017. (Lod. 12.) The court found Petitioner's habeas petition was "barr[ed] . . . as untimely" and that the temporary exclusion of his friends and family was de minimis and did not violate his right to a public trial. (*Id.* at 2-3.)

On July 13, 2017, Petitioner filed a petition in the California Supreme Court, raising the same violation of his sixth amendment right to a public trial. (Lod. 14.) On September 20, 2017, the California Supreme Court denied the petition. (Lod. 14.)

**C. Instant Petition for Writ of Habeas Corpus**

On October 5, 2017, Petitioner filed the instant petition claiming that: (1) his sixth amendment right to a public trial was violated; (2) the trial court erred in denying his motion to suppress evidence; and (3) there was insufficient evidence of a disfiguring injury to support his mayhem conviction. (Petition.) As discussed more fully below, Respondent has filed a Response to the Petition with Lodgments and Petitioner has filed a Traverse.

5

17cv02084 CAB (BGS)

# DISCUSSION

## I. Legal Standards Under § 2254

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the clearly established law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). However, "a state court need not cite or even be aware" of Supreme Court precedent when resolving a habeas corpus claim under § 2254(d). *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions, but unreasonably applied those decisions to the facts of a particular case. *Bell*, 535 U.S. at 694. Clearly established federal law refers to the holdings, as opposed to the dicta, of Supreme Court cases. *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015). "[A]n 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.* (citing *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting

*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Under § 2254(d)(2) "a petitioner may challenge the substance of the state court's findings and attempt to show that those findings were not supported by substantial evidence" or "challenge the fact-finding process itself on the ground that it was deficient in some material way." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012). "Regardless of the type of challenge, 'the question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold." *Id.* "[W]hen the challenge is to the state court's procedure, . . . [the court] must be satisfied that any appellate court to whom the defect in the state court's fact-finding process is pointed out would be unreasonable in holding that the state courts fact-finding process was adequate.'" *Id.* at 1146-47; s*ee also Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004). (the federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.").

When there is no reasoned decision from the state's highest court, a federal court should "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). This applies to one-word rulings, such as "affirmed" or "denied." *Wilson*, 138 S. Ct. at 1192. Federal courts should then "presume that the unexplained decision adopted the same reasoning" as the last lower court decision. *Id.* Here, the last reasoned decision on Petitioner's public trial claim is the Court of Appeal's June 29, 2017 decision because the California Supreme Court's September 20, 2017 denial stated only "Petitioner for writ of habeas corpus denied" without citation. (Lod. 14.) The last reasoned decision on Petitioner's Fourth Amendment and sufficiency of the evidence claims is the Court of Appeal's October 26, 2015 decision because the California Supreme Court's February 3, 2016 denial stated only "The petition for review

is denied" without citation.[5] (Lod. 8.)

## II. Petitioner's Sixth Amendment Claim

Petitioner argues that he was denied his sixth amendment right to a public trial because his family members were excluded from the courtroom during voir dire. (Petition at 14-18.) Respondent has filed an answer and response to the Petition arguing that Petitioner's sixth amendment claim is procedurally defaulted, meritless, and was waived because his trial counsel never objected to the exclusion of Petitioner's family. In his Traverse, Petitioner responds that his public trial claim was timely, that he was not obligated to object to the exclusion of his family from voir dire, and that he is entitled to an evidentiary hearing on this claim.

On January 27, 2014, just before voir dire began, the following exchange occurred between defense counsel and the court:

> **[DEFENSE COUNSEL:]** Your Honor, just so you know, too, your bailiff has been so – so kind to allow family members of my client to come in previously. I'm going to hope that there will be no future issue at all.
> **THE COURT**: Well, I, ah – first of all, during the jury selection, we're just not going to have room for them because the court is going to be full of prospective jurors. But once – certainly once we get the jury selected, they'll be free to be here. As long as – I think the bailiff did have a little – had to talk a little bit with one of the family members the other day. But I think hopefully that was effective and that won't be – won't be a problem.
> But, no, same rule. As long as they follow the rules and don't cause any problem, they're welcome to be here. I say, not during the jury selection because we just don't have room for them.

(Lod 1. at 308[6].)

The next day, on January 28, 2014, still during voir dire, the court further admonished the jury:

---

[5] As discussed above, Petitioner only raised his public trial claim in his state habeas petitions.
[6] The Court cites the consecutive page number of the Reporter's Transcript, Lodgment 1.

8

> THE COURT: There are some folks here who have an interest in the case. And they have a right to be here in or about the courtroom. But I think you recognize who they are. And don't have any contact with them. Don't let them have any contact with you. I'm not suggesting they have a right to be here and they haven't done anything improper. But just to maintain some distance from them so you don't inadvertently overhear what they might be discussing which may have something to do with the case or [Petitioner] but won't be any part of the evidence upon which you have to base your finding.
> So think about serving as a juror. Think about what we're talking about here. But keep those thoughts to yourselves.

(Lod. 1 at 347.)

### A. Procedural Default

Respondent argues Petitioner's public trial claim is procedurally barred because the Court of Appeal denied the claim based on California's timeliness rule[7] and that bar is an independent and adequate state bar that precludes federal habeas relief. Petitioner argues the Court of Appeal should not have found his petition untimely because he did not understand the basis for the claim at the time of trial and he timely raised the claim on direct appeal. Petitioner does not address the independence or adequacy of the bar.

"A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 315 (2011) (citing *Beard v. Kindler*, 558 U.S. 53, 55 (2009)). "[A]bsent showings of 'cause' and prejudice,' federal habeas relief will be unavailable when (1) 'a state court has declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate

---

[7] The court also held that Petitioner was further barred because he asserted a claim that was both raised and rejected on direct appeal. (Lod. 12 at 3 (citing *In re Reno*, 55 Cal. 4th at 476, *In re Waltreus* 62, Cal. 2d 218, 225 (1965)).) Respondent does not argue the claim is barred on this basis as would be the state's burden. *Bennett v. Mueller*, 322 F.3d 573, 585 (9th Cir. 2003) (explaining that procedural default is an affirmative defense that must be pled by the state).

state procedural grounds.'" *Id.* at 316 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977) and *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) *modified on other grounds by Martinez v. Ryan*, 566 U.S. 1, 9 (2012)) (internal citations omitted). "[F]ederal courts are to 'presume that there is not independent and adequate state ground for a state court decision when the decision fairly appears to rest primarily on federal law, or to be interwoven with federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Nitsche v. Belleque*, 680 F3d 1105, 1109 (9th Cir. 2012) (quoting *Coleman*, 501 U.S. at 730 (1991)). As discussed below, the Court of Appeal's decision clearly states that its judgment rests on a state procedural bar that is independent and adequate.

### 1. Court of Appeal's Decision Rests on a State Procedural Bar

The opinion of the last state court rendering a judgment in the case must "'clearly and expressly' state that its judgment rests on a state procedural bar." *Thomas v. Goldsmith*, 979 F. 2d 746, 749 (9th Cir. 1992) (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)). "A state court's application of a procedural rule is not undermined where . . . the state court simultaneously rejects the merits of the claim." *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003).

Here, there is no question that the state court relied on a state procedural bar. After summarizing the procedural history of the claim and Petitioner's arguments in his state habeas petition, the Court of Appeal found Petitioner's public trial claim was barred as untimely. The court explained the following with regard to the timing of his petition:

> He knew the factual basis for his claim of denial of his right to a public trial in January 2014, when his family members and friends were excluded from the courtroom during jury selection; *yet he waited more than three years from then, more than two-an-a-half years from sentencing, and more than 15 months from affirmance on appeal, to seek habeas corpus relief. Guillory does not explain why it took him so long* to obtain declarations from the family members and friends who were allegedly excluded from the courtroom during jury selection and who, presumably, would have been willing to sign declarations to help him overturn his convictions. Such lack of diligence in pursing relief *bars a habeas corpus petition as untimely* even when the

petition alleges a constitutional violation.

(Lod. 12 at 2-3 (citing *In re Reno*, 55 Cal. 4th 428, 459-60 (2012), *In re Ronald E.*, 19 Cal. 3d 315, 322 (1977), and *People v. Miller*, 6 Cal. App. 4th 873, 881-883 (1992))(emphasis added). The court identifies his substantial delay, finds he has failed to explain it, and explicitly finds it is barred as untimely. To the extent the court's explicit statement that the petition is barred as untimely and its identification of the ways in which it is untimely is not in itself sufficient to convey the court is relying on this state bar, the court's citation of *In re Reno,* 55 Cal. 4th at 459-60 (2012), only reinforces that the court is applying the state's untimeliness procedural bar. This portion of *In re Reno* is entitled "Timeliness" and discusses California's timeliness bar in detail, including its purpose, application, and exceptions. *In re Reno*, 55 Cal. 4th 459-60.[8] The Court of Appeal's decision rests on Petitioner's failure to meet the state's timeliness requirement.

### 2. Independent and Adequate

"A state procedural rule constitutes an 'independent' bar if it is not interwoven with federal law or dependent upon a federal constitutional ruling." *Cooper v. Brown*, 510 F.3d 870, 924 (9th Cir. 2007). "A state law ground is so interwoven if the state has made application of the procedural bar depend on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed." *La Crosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001)(citations omitted). In *Bennett v. Mueller*, the Ninth Circuit concluded that because California courts, post-*Robbins*, can no longer consider federal law when applying California's untimeliness bar, "California untimeliness rule is not interwoven with federal law." 22 F.3d 573, 581-583 (9th Cir. 2003) (discussing *In re Robbins*, 18 Cal. 4th 770 (1998)); *see also Walker*, 562 U.S. at 315 (citing *Bennett*,

---

[8] This same portion of the *In re Reno* decision cited begins with a citation to *In re Clark*. *Id.* at 459 (citing 5 Cal. 4th 750, 765 (1993), *superseded by statute on other grounds as stated in Briggs v. Brown*, 3 Cal. 5th 808, 842 (2017)). This portion of *Clark* also discusses timeliness. 5 Cal. 4th at 765.

11

17cv02084 CAB (BGS)

322 F.3d at 582-83 in noting no dispute that the time limitation is an independent state ground). The untimeliness bar imposed by the Court of Appeal is independent.

"To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" *Walker*, 562 U.S. at 316 (quoting *Kindler*, 130 S. Ct, 618). "California's time rule, although discretionary, meets the 'firmly established' criterion." *Id.* at 317. In *Walker v. Martin*, the Supreme Court explicitly found the rule's requirements to show the absence of substantial delay, good cause for delay, or eligibility for one of the exceptions, were not too vague to be firmly established. *Id.* The court also rejected the suggestion the rule was not regularly followed because California courts exercise some discretion from case to case that might seem inconsistent on the surface. *Id.* at 319-20. The untimeliness rule applied by the Court of Appeal is an adequate procedural ground.

The Court concludes that the untimeliness bar applied by the Court of Appeal is an independent and adequate state procedural ground.

### 3. Cause and Prejudice

When, as here, "a state prisoner has defaulted his federal claims in the state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice." *Coleman*, 501 U.S. at 750. "To establish cause . . . the [petitioner] must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "A factor is external to the defense if it 'cannot fairly be attributable' to the prisoner." *Id.*

Petitioner does not argue he has demonstrated cause for the default, but in disputing the Court of Appeal's determination that his petition was untimely, he argues he was not dilatory because he did not understand the exclusion of his family from voir dire might constitute a sixth amendment violation at the time of trial and that he was entitled to wait until the criminal process played out before filing his direct appeal or habeas petition.

However, he does not address the delay in filing the state habeas petition. As the Court of Appeal explained in applying the untimeliness bar, it took Petitioner "more than 15 months from affirmance on appeal to seek habeas relief." (Lod. 12 at 2.) He does not identify any objective factor external to the defense that precluded him from complying with the state's timeliness rule. The only possible basis the Court can infer is that Petitioner was attempting to get the declarations he eventually submitted to the Superior Court with the habeas petition to show two family members were excluded, but as was the case before the Court of Appeal, Petitioner has not explained why it took him so long to obtain declarations from family members. Nor has he explained how something external to him caused that delay. Petitioner has not shown cause for his failure to comply with California's untimeliness rule. When, as here, a petitioner fails to show cause for the default, the "court need not consider whether he suffered actual prejudice." *Roberts v. Arave*, 847 F.2d 528 530 n. 3 (citing *Engle v. Issac*, 456 U.S. 107, 134 n. 43 (1982)); *Smith v. Murray*, 477 U.S. 527, 533 (1985).

Federal habeas relief is unavailable on this claim because the state court decision relies on an independent and adequate state procedural ground and Petitioner has failed to show cause for the default. The undersigned **RECOMMENDS** the court find Petitioner's public trial claim is procedurally barred and **DENY** the claim on that basis.

### III. Petitioner's Fourth Amendment Claim

Petitioner argued in his Petition that the search of his residence and trial court's denial of suppression of the evidence obtained in that search violated the Fourth Amendment. (ECF 1 at 19-28.) In addition to arguing the Court of Appeal's decision on this claim was not contrary to or an unreasonable application of clearly establish law, Respondent argued that this claim is barred under *Stone v. Powell*, 428 U.S. 465, 494 (1976). Petitioner now agrees that the claim is barred by *Stone v. Powell*.

Petitioner's Traverse begins with a section in which he either admits or denies Respondent's arguments. As discussed above, as to claim one he denies the claim is procedurally defaulted, and as to claim three, discussed below, he denies the state court reasonably applied *Jackson v. Virginia* in rejecting his sufficiency of the evidence claim.

13

(Traverse at 1.) However, as to this claim, Petitioner indicates "(2) Claim two, asserting that the trial court should have suppressed evidence per PC 1538.5, is barred by Stone v. Powell, ADMITTED." (*Id.*) Later in the Traverse, in a section titled "Petitioner Guillory has received a full and fair hearing on claim two,"

> Petitioner Guillory admits that his claim of Fourth Amendment violation related to a search of his Mother's house is barred by the Supreme Court's ruling in Stone v. Powell, 428 U.S. 465 (1976). Petitioner admits to receiving a full and fair hearing, as this claim was fully addressed when raised in the Superior Court via PC 1538.5 motion to suppress, and on direct review in the Court of Appeal.

Given Petitioner's change in position, the Court finds Petitioner is not entitled to relief on this claim. He admits the claim is barred by *Stone v. Powell* because he received a full and fair hearing on this claim. 428 U.S. at 494. Under *Stone v. Powell*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494. Accordingly, the Court **RECOMMENDS** habeas relief be **DENIED** on this claim.

## IV. Petitioner's Insufficiency of the Evidence Claim

Petitioner argues the evidence was not sufficient to support his conviction for mayhem as to the permanent disfigurement element, discussed below. More specifically, Petitioner argues that because the testimony concerning the victim's ongoing problems with his leg at the time of trial should be interpreted as related to other things than being shot, the evidence was not sufficient. Respondent argues Petitioner is not entitled to relief because the Court of Appeal's rejection of this claim, finding the evidence the victim was permanently disfigured for purposes of mayhem, was not contrary to or an unreasonable application of clearly established Supreme Court authority.

### A. *Jackson* under AEDPA

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due

process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). "First, he must meet the burden under *Jackson v. Virginia* of showing that 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Marquiz v. Hedgpeth*, 907 F.3d 1212, 1217 (9th Cir. 2018) (quoting *Jackson*, 443 U.S. 307, 319 (1979)). "After the passage of [AEDPA], the standards of *Jackson* are applied 'with an additional layer of deference' requiring the federal court to determine 'whether the decision of the state court reflected an unreasonable application of *Jackson* . . . to the facts of this case.'" *Id.* (quoting *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005)). "[H]owever, speculation and conjecture cannot take the place of inferences and evidence." *Id.*

The elements of the offense are determined under state law. *Juan H.*, 408 F.3d at 1275-76 ("we undertake the inquiry with reference to the elements of the criminal offense as set forth by state law") (citing *Jackson*, 443 U.S. at 324 n. 16). Section 203, simple mayhem, provides: "Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem." Cal. Penal Code § 203. Petitioner was convicted of mayhem on the basis of a disfiguring injury. (Lod. 6 at 21 (quoting jury instruction given at trial). "To prove mayhem based on a disfiguring injury, the injury must be permanent." *People v. Hill*, 23 Cal. App. 4th 1566, 1571 (1994). Permanence can be inferred from an extended period of injury. *People v. Thomas*, 96 Cal App. 3d 507, 512 (1979) (finding ankle injury lasting six months sufficient for disability) *overruled on other grounds in People v. Kimble*, 44 Cal.3d 480, 498 (1988)). Injuries must be more than slight and temporary to support mayhem convictions. *People v. Johnson*, 21 Cal. App. 5th 267, 281 (2018) (citing *Thomas*, 96 Cal App. 3d at 512). "[A]n injury may be considered legally permanent for purposes of mayhem despite the fact that cosmetic repair may be medically feasible." *People v. Santana*, 56 Cal. 4th 999, 1007 (2013). And, "although not every visible scarring wound may establish mayhem under section 203, a variety of injuries have qualified as disfiguring injuries for mayhem, including burns, facial

lacerations, forcible tattoos. *People v. Santana*, 56 Cal. 4th at 1004 (summarizing cases) (citations omitted).

### B. Court of Appeals Decision

The Court of Appeal concluded there was sufficient evidence to support the finding that defendant was permanently disfigured for purposes of his mayhem conviction. (Lod. 6 at 22.) The court summarized the parties' stipulations regarding the victim's injuries from the gun shot, including:

> the victim 'was shot on his right thigh and had a 0.5 centimeter entry wound on the front of his thigh and [a] 0.5 centimeter exit wound on the back of his thigh'; '[t]here was a small collection of blood around the wound on the front of his right thigh'; '[t]here was no gross deformity'; the victim 'had some chronic apparent swelling of the right medial ankle with a healed incision there'; and while still in the hospital recovering from his wounds, the victim 'got up to go to the restroom and large amounts of blood seeped out of the wound on the back of his thigh.

(Lod. 6 at 21-22.)

The court also identified testimony from the victim that his leg was not doing well and that he had 17 screws put into his leg. (Lod. 6 at 22.)

The court found the evidence was sufficient to support the jury's finding the victim was permanently disfigured for purposes of the mayhem conviction. (*Id.*) The court explained that there was evidence the injury was permanent. (*Id.*) The court explained that "at the time of trial when the victim testified his leg was not doing well, it had been almost two years since the shooting." (*Id.*) The court also noted the evidence the victim had scarring on his thigh from the entry and exit wound. (*Id.*)

### C. Application of *Jackson* Under AEDPA

As an initial matter, the Court rejects Petitioner's argument that a single gunshot wound cannot form the basis for a mayhem conviction because the legislature did not intend for mayhem convictions to result from a single gunshot. In looking to the elements of the offense of mayhem based on disfiguring the victim, discussed above, it is apparent

that a defendant's method of disfiguring the victim, gun shot or otherwise, is not an element of the offense. Cal. Penal Code § 203 ("Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem.")

Petitioner's argument that the victim's testimony was not sufficient to support the permanent disfigurement element because the victim's ongoing issues with his leg must be attributable to other factors than the gunshot wound is also not persuasive, particularly under the applicable *Jackson* standard with the required additional layer of deference under AEDPA. *Juan H.*, 408 F.3d at 1274. However, this challenge requires more discussion.

As set forth above, the Court's inquiry here is whether the Court of Appeal's decision "reflected an unreasonable application of *Jackson* to the facts of this case." *Marquiz*, 907 F.3d 1217. The Court's inquiry is not "'to ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt.'" *Jackson*, 443 U.S. at 318-19 (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966)(emphasis in *Jackson*)). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The distinction is important in general, but particularly here, because the latter question "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

Petitioner asserts that part of the testimony the Court of Appeal relied on — that almost two years after the shooting, the victim's leg was not doing well — should not have been attributed to the shooting. Petitioner argues that because the testimony that followed noted a number of other factors that might be the cause of his leg not doing well — getting older, knees worn out, used to run a lot — that testimony was insufficient to establish he was still suffering from the gunshot wound at that time, it could not support his mayhem conviction.

However, there is testimony that the victim's leg was not doing well followed by testimony that he still had pain in his leg from the shooting. (Lod. 1 at 471-472.) When asked "You still have any pain from the shooting injury?" he initially responds "yeah" and then "nah" and then "yeah" and then goes on to talk about the other factors noted above. (Lod. 1 at 472.) The Court recognizes that the victim's testimony here and throughout is not crystal clear.[9] However, conflicts in the testimony and what reasonable inferences to draw from testimony are matters for the jury to decide. *Jackson*, 443 U.S. at 319. In the context of the other evidence, particularly the stipulations as to the victim's injuries, noted by the Court of Appeal, the jury could have concluded his injury from the gunshot has persisted for almost two years either by inference or taking the victim's initial response as true. The jury might have simply believed his initial response, "yeah" when asked "you still have any pain from the shooting injury?" or inferred from the mixed response and his stipulated injuries that he was still suffering from the injury almost two years later. This would be a reasonable conclusion or inference to draw from the evidence. "[A] federal habeas court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

The Court cannot find Petitioner meets the *Jackson* standard. "[V]iewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found" the permanent disfigurement element "beyond a reasonable doubt." *Id.* at 319. Applying the additional layer of deference required by AEDPA, the Court certainly cannot find the Court of Appeal's decision reflected an unreasonable application of *Jackson.* The Court of Appeal identified the elements of the offense, identified the evidence supporting

---

[9] A review of the transcript of the victim's testimony reflects that he did not want to testify in this case and was only present because he was ordered to be there. (Lod. 1 at 457, 473, 475.)

18

17cv02084 CAB (BGS)

permanent disfigurement, discussed above, and concluded it was sufficient. The decision is not objectively unreasonable. *Woods*, 135 S Ct. at 1376 (explaining unreasonable application "must be objectively unreasonable, not merely wrong; even clear error will not suffice.).

The Court **RECOMMENDS** habeas relief be **DENIED** on this claim.

## CONCLUSION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition.

**IT IS ORDERED** that no later than **December 28, 2018** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **January 11, 2019.** The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

Dated: December 5, 2018

Hon. Bernard G. Skomal
United States Magistrate Judge